# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00123-CR

---

**The State of Texas, Appellant**

**v.**

**Sarah Leeann Nix, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
NO. 2017CR2590, THE HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellee, Sarah Leeann Nix, was arrested and charged with Driving While Intoxicated (DWI). *See* Tex. Penal Code § 49.04. The State appeals the trial court's order granting Nix's motion to suppress.[1] We reverse the trial court's order and remand for further proceedings.

---

[1] In her brief, Nix contends that the State's issues are multifarious and may be overruled on that basis. *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd) (explaining that issue containing "more than one specific ground of error is a multifarious one" and that appellate courts "may refuse to consider it"). To the extent any of the State's issues presented are multifarious, we decline to use our discretion to overrule them on that basis, as we can determine with reasonable certainty the alleged errors being challenged. *See id.* (explaining that appellate courts "may consider multifarious issues if [they] can determine, with reasonable certainty, the alleged error about which the complaint is made").

## BACKGROUND

Deputy Rafael Pinilla arrested Nix for DWI and obtained a search warrant to seize a blood sample, which was signed by the trial-court judge who later granted Nix's motion to suppress. As relevant here, Nix moved to suppress the blood analysis on the grounds that the search warrant was not supported by a sworn affidavit because no oath had been administered to the officer. A visiting judge held an evidentiary hearing and heard the parties' arguments about the validity of the search warrant. The State argued that the search warrant was valid because although no oral oath was given, the officer signed the probable cause affidavit in front of a notary public, which constituted a written oath. The State argued alternatively that even if the officer was not under oath, the good-faith exception to the warrant requirement applied. The visiting judge denied Nix's motion to suppress based on *Clay v. State*, 391 S.W.3d 94, 103–04 (Tex. Crim. App. 2013) (holding that oath for search warrant affidavit does not have to be sworn to in physical presence of magistrate).

Nix moved for reconsideration of the denial of her motion to suppress. During the pendency of Nix's motion, the Court of Criminal Appeals issued its ruling in *Wheeler v. State*, 616 S.W.3d 858 (Tex. Crim. App. 2021). The trial court judge, based on the parties' arguments, *Wheeler*, and the record of the earlier suppression hearing, reconsidered the court's prior ruling and granted Nix's motion to suppress. Upon the State's request, the trial court entered the following findings of fact and conclusions of law:

*FINDINGS OF FACT*

- On March 12th, 2016, Deputy Rafael Pinilla, of the Comal County Sheriff's Department, stopped, detained and arrested Defendant, Sarah Nix, for the offense of Driving While Intoxicated (DWI).
- Ms. Nix refused to voluntarily provide a specimen [of] blood or breath upon Deputy Pinilla's request following her arrest.

2

• As such, Deputy Pinilla transported Ms. Nix to a Christus Santa Rosa Hospital for the purpose of obtaining a blood sample via search warrant.

• State's Exhibit No. 1 was entered into evidence and is a document purported to be a Search Warrant Affidavit.

• As evidenced by State's Exhibit No. 2, which is an audio recording of the events captured on the body microphone linked to the Deputy's dash camera in his patrol car, Deputy Pinilla asked if there was a notary available to sign State's Exhibit No. 1 in support of the issuance of a blood search warrant.

• Moments later, a female voice is heard on State's Exhibit No. 2 (later identified as notary public Nanette Marie Scranton).

• Ms. Scranton can be heard on State's Exhibit No. 2 asking Deputy Pinilla for his identification and the two of them can be heard engaging in limited small talk, including the date.

• At no time did notary public Scranton administer an oath, or anything resembling an oath.

• Deputy Pinilla can then be heard on the phone with this Court (Hon. Stephens), informing the Court he is seeking authorization for a blood search warrant.

• Deputy Pinilla can be heard repeating a number, which he testified was a number provided by this Court to fax State's Exhibit No. 1.

• This Court administered no oath.

• Deputy Pinilla testified no oath was ever administered to him by anyone regarding the assertions or contents of State's Exhibit No. 1 in support of a blood search warrant.

• Deputy Pinilla can then be heard asking for assistance using the fax machine and according to his previous testimony he then faxed State's Exhibit No. 1 to this Court without any further conversation.

• The video recording of the event introduced into evidence is devoid of any reference in any way to any oath or affirmation.

• No evidence was presented that an oath was administered and no written attestation suggesting an oath was administered was submitted into evidence.

• In applying for the search warrant, Deputy Pinilla used preprinted, fill-in-the-blank/check-the-box forms for State's Exhibit No. 1.

• Deputy Pinilla never swore to State's Exhibit No. 1 before anyone. He merely signed the document on the line immediately above the jurat labeled "affiant," filled in the blanks for the date in the jurat, and gave it to the notary, who then signed the document without oath or affirmation.

• Deputy Pinilla electronically submitted State's Exhibit No. 1 to this Magistrate.

• Not realizing that State's Exhibit No. 1 was in fact, unsworn, this Magistrate signed the jurat and the search warrant.

• Deputy Pinilla executed the warrant.

*CONCLUSIONS OF LAW*

The Court recognizes the recent holding in *Wheeler v. State*, [616 S.W.3d 858, (Tex. Crim. App. 2021)] as controlling authority in this matter.

One of the most fundamental tenets of search and seizure law is that a search warrant must be supported by a probable-cause affidavit that is sworn "by oath or affirmation." Tex. Const. art. I, § 9 & U.S. Const. [] amend. [IV]. This oath or affirmation requirement is so critical that our Legislature codified it numerous times in the Texas Code of Criminal Procedure. . . . Thus, it is well established under Texas law that a search warrant cannot properly issue without a probable-cause affidavit made under oath. "An oath is any form of attestation by which a person signifies that he is bound in conscience to perform an act faithfully and truthfully." *Vaughn v. State*, [] 177 S.W.2d 59, 60 ([Tex. Crim. App.] 1943). "The difference between an affidavit and an oath is that an affidavit consists of a statement of fact, which is sworn to as the truth, while an oath is a pledge." *Id*. (citing 39 Am. Jur. 494). Texas law has always required that the oath must be made "before" or in the presence of another to convey the solemnity and critical nature of being truthful. *See Clay v. State*, 391 S.W.3d 94, 98–99 (Tex. Crim. App. 2013) ("[T]his Court has held for the better part of a hundred years that, before a written statement in support of a search warrant will constitute a 'sworn affidavit,' the necessary oath must be administered 'before' a magistrate or other qualified officer.").

The Court further recognizes it is without question that good faith reliance pursuant to the codified Texas exclusionary rule does not overcome both the United States and Texas Constitution requirements that search warrant probable cause affidavits must be supported by oath or affirmation. "Statutory enactment does not take precedence over a Constitutional requirement[.]" *Tex[as] Bd. of Pardons & Paroles v. Miller*, 590 S.W.2d 142, 142 (Tex. Crim. App. 1979).

However, under the Texas Exclusionary Rule, evidence obtained in violation of any provision of state or federal law cannot be used at trial in a criminal prosecution. The Court expressly acknowledges that there is, however, an exception to this exclusionary rule for evidence "obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." Tex. Code Crim. Proc. art. 38.23(b). The exception plainly requires objective, rather than subjective, good-faith reliance upon a search warrant. In applying this objective standard to the facts here, this requirement was not met because no objectively-reasonable officer would execute a search warrant knowing that it was procured through an unsworn probable-cause affidavit. Accordingly, the good-faith exception does not apply and the

4

statutory exclusionary rule prohibits admission of the blood evidence that was obtained in violation of Texas law.

In determining whether Deputy Pinilla acted in good faith under the good-faith exception, the Court examined whether a reasonable police officer in Deputy Pinilla's position would have believed the warrant was valid.

*Wheeler* expressly cites *McClintock* as solidifying that it is the objective reasonableness of the officer's conduct, based on the facts and circumstances he knows at the time, that dictates whether the statutory good-faith exception applies. The officer's subjective intentions or beliefs about whether his conduct was lawful or reasonable are irrelevant under the statutory terms.

In making such an analysis, this Court specifically took into account the credibility of the witness, as well as his education, training and experience.

Applying the statute's requirement of objective good faith to the situation at hand, I conclude that no objectively-reasonable police officer would have believed that the warrant here was valid when it was knowingly obtained by his own unsworn probable-cause affidavit. In fact, it was wholly unreasonable for any officer in Deputy Pinilla's shoes to believe that there was no need to attest to a probable-cause affidavit when: (1) the oath requirement has been a constitutional mandate for all law enforcement officers for well over a century; (2) the Texas Legislature has codified and repeatedly emphasized the oath requirement in the Code of Criminal Procedure; (3) the Court of Criminal Appeals' opinions have consistently held that the oath requirement is critical to obtaining a search warrant; (4) law enforcement officers are taught in the police academy that they must swear to the truthfulness of their probable-cause affidavits before a magistrate or other qualified person; and (5) the forms used by Deputy Pinilla in this case for the probable-cause affidavit and search warrant both refer to the oath requirement and state that the documents were "duly sworn, on oath" and/or "sworn before" a notary public.

The evidence failed to show that Deputy Pinilla signed the affidavit with "'a sense of seriousness and responsibility' or with a 'sense of [his] moral duty to tell the truth,'" such that this Court does not find that the purposes of the oath has been satisfied. *Id*. at 443 (quoting *Smith v. State*, 207 S.W.3d 787, 790 (Tex. Crim. App. 2006)). Additionally, no oath or its equivalent actually occurred, thus foreclosing a finding that the oath requirement was satisfied. *Id*. at 443-44.

5

Given how fundamental the oath requirement is, no objectively-reasonable officer could have believed that an oath was not required to support his probable-cause affidavit; therefore, an officer preparing such an affidavit could not have reasonably believed that the subsequent warrant was not tainted by this defect. *See Wheeler*, *supra* at 8. This was not a mere procedural irregularity with respect to how the affidavit was sworn. It was not sworn at all.

Deputy Pinilla's conduct in submitting an unsworn probable-cause affidavit and then executing the subsequent blood search warrant was objectively unreasonable, such that the officer cannot be said to have acted in "objective good faith reliance" on the search warrant. Tex. Code Crim. Proc. art. 38.23(b).

Defendant's Motion to Suppress on this ground was GRANTED and all evidence relating to the blood draw and subsequent testing was excluded and inadmissible.

The State requested specific additional findings. No additional findings were entered. This appeal followed.

## STANDARD OF REVIEW

"In review of a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We are to apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and of mixed questions of law and fact that rely on the credibility of a witness but applying a de novo standard of review to pure questions of law and to mixed questions that do not depend on credibility determinations. *Id.*

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011). If the trial court makes findings of fact, as it did here, we determine whether the evidence supports those findings. *Id.* We then review the trial court's legal rulings de novo

6

unless the findings are dispositive. *Id.* "We will sustain the trial court's ruling if that ruling is 'reasonably supported by the record and is correct on any theory of law applicable to the case.'" *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

## ANALYSIS

The State first argues that the trial court abused its discretion by granting Nix's motion to suppress because the language included in the affidavit in this case meets the requirement of a sworn oath, and if there was not a sworn oath, the good-faith exception applies. *See* Tex. Code Crim. Proc. arts. 18.01(b), 38.23(b). The State then argues, alternatively, that this Court should abate and remand this cause to the trial court for additional fact-finding. The State lastly argues that the trial court judge erred by not relying on the implied credibility determinations of the visiting judge when granting the previously denied motion without holding an additional evidentiary hearing.

The State asserts that Deputy Pinilla was under oath when he signed the affidavit because he signed it in front of a notary public, understanding that he was swearing that the contents of the affidavit were true. The State does not argue that an oral oath was given but rather that a written oath was contained within the affidavit because it stated in the first line that the "undersigned Affiant, being a peace officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations" and ended with "[s]ubscribed and sworn to before me," which was followed by the notary's signature. We agree for the reasons detailed below that the record contains evidence of an oath.

7

It is well established that article 18.01(b) requires a "sworn affidavit." *See Clay*, 391 S.W.3d at 98; *Smith*, 207 S.W.3d at 789–90; *Vaughn*, 177 S.W.2d at 61–62. To qualify as a sworn affidavit, the declaration of facts contained in the affidavit must be confirmed by oath. *See Vaughn*, 177 S.W.2d at 61. "The purpose of this oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *Smith*, 207 S.W.3d at 790. In the context of a search-warrant affidavit, "an oath is both constitutionally and statutorily indispensable." *Clay*, 391 S.W.3d at 97. "Our Code of Criminal Procedure prescribes no form of oath necessary to be administered to a witness, or one attesting, under oath, any fact in a criminal proceeding." *Vaughn*, 177 S.W.2d at 60.

Here, the trial court granted Nix's motion to suppress because it found that "[n]o evidence was presented that an oath was administered and no written attestation suggesting an oath was administered was submitted into evidence." This finding was partially based on the court's other findings that it "administered no oath" and that "[n]ot realizing that [the probable cause affidavit] was in fact, unsworn, this Magistrate signed the jurat and the search warrant." These findings are not supported by evidence in the record. Rather, the record indicates that the officer was under oath when he signed the affidavit before the notary public, who is authorized to administer oaths. *See* Tex. Gov't Code § 602.002(5).

The first piece of evidence in the record that supports an oath is the affidavit itself, which included in the first paragraph the words, "being duly sworn, on oath," and ended with a jurat signed by both Detective Pinilla and the notary public and was accompanied by the words, "subscribed and sworn to." *See* Tex. Code Crim. Proc. art. 18.01 (containing no statutory requirement that sworn affidavit require *oral* oath); Tex. Gov't Code § 602.001 (providing that "'oath' includes oath in affidavit").

8

The second piece of evidence in the record of an oath is the magistrate-signed search warrant, which says, "the Affiant, whose name appears on the Affidavit attached hereto . . . did heretofore this day subscribed and swore to said affidavit before me." *See Smith*, 207 S.W.3d at 793 (including warrant signed by magistrate that stated it was sworn before magistrate among evidence presented in support of conclusion that affidavit was sworn under oath).

Nix argues that the State's interpretation of the requirements for an oath is contrary to the Court of Criminal Appeals' decision in *Wheeler*, 616 S.W.3d at 861. There, an officer signed the probable-cause affidavit without an oath being administered. *Id.* Specifically, the officer "never swore to the affidavit before anyone. Instead, he merely signed the affidavit on the line immediately above the jurat labeled 'affiant,' filled in the blanks for the date in the jurat, and gave it to the dispatcher, leaving the signature for the jurat blank." *Id.* Further, the officer testified that he had not sworn under oath, that he believed an oath was not required, and that he had never sworn to a probable cause affidavit as long as he had been employed with the police-department. *Id.* at 861–62.

The facts of *Wheeler* are distinguishable from those before this Court. Here, at the evidentiary hearing before the visiting judge, Deputy Pinilla testified that he: signed the affidavit in front of a notary public, was taught about the importance of being truthful when drafting an affidavit, and believed he was swearing to the statements contained in his affidavit when he signed it in front of the notary public. There was also an audio recording entered into evidence of Deputy Pinilla seeking the assistance of a notary to sign the affidavit. Thus, unlike in *Wheeler*, there is evidence here that the officer signed the affidavit, which included language of a written oath, "before" a notary. *See Clay*, 391 S.W.3d at 98–99 ("[T]his Court has held for

9

the better part of a hundred years that, before a written statement in support of a search warrant will constitute a 'sworn affidavit,' the necessary oath must be administered 'before' a magistrate or other qualified officer."); Tex. Gov't Code § 602.002(5) (authorizing notary public to administer oaths).

Additionally, the Second Court of Appeals distinguished the facts present in *Wheeler* from the facts in *Ashcraft v. State*, No. 03-12-00660-CR, 2013 WL 4516193, at *6–7 (Tex. App.—Austin Aug. 20, 2013, no pet.) (mem. op., not designated for publication), which are similar to the facts here. *See Wheeler v. State*, 573 S.W.3d 437, 443 (Tex. App.—Fort Worth 2019), aff'd, 616 S.W.3d 858 (Tex. Crim. App. 2021) ("These facts distinguish this case from the cases relied on by the State to support its argument that the oath recitations can render an affidavit sworn."). In *Ashcraft*, this Court upheld the trial court's conclusion that the oath requirement was met where although there was "some evidence that the officer administering the oath did not actually verbalize the recitation of an oath, the affiant signed the affidavit in the presence of the subscribing officer and with full understanding of its implications." *Ashcraft*, 2013 WL 4516193, at *2, 7. Similarly here, and distinct from *Wheeler*, Deputy Pinilla, testified that he believed he was swearing to the statements contained in his affidavit when he signed it in front of the notary public. *See Wheeler*, 616 S.W.3d at 861.

Furthermore, in *Wheeler* it was not disputed whether the officer had taken an oath, but rather the single issue decided was whether the good-faith exception applied. *See* 616 S.W.3d at 860. *Wheeler* does not support Nix's interpretation of an oath.

Thus, the record in this case includes evidence of an oath. The trial court's ruling is not "'reasonably supported by the record and is [not] correct on any theory of law applicable to the case.'" *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). We sustain

the State's first issue and reverse the trial court's grant of Nix's motion to suppress. Because we sustained the State's first issue, we need not reach its alternative arguments.

## CONCLUSION

Having sustained the State's first issue, we reverse the trial court's grant of Nix's motion to suppress and remand for further proceedings consistent with this opinion.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Smith
  Dissenting Opinion by Justice Kelly

Reversed and Remanded

Filed:   March 29, 2023

Do Not Publish

11